Spear, C. J.
Whether the defendant should J^ave been tried by a jury selected under the act providing for the appointment of jury commissioners and the selection of jurors passed September 30; 1902, or by a jury summoned under the provisions of the act relating to the selection of jurors in force át the .timé the crime was committed and the prosecution begun, is the question principally argued.It was the opinion of the circuit court, and is the contention .of counsel for defendant in error here, that a jury to try the indictment should have been selected in conformity with the provisions of the latter act, and that therefore the overruling of the challenge to the array was erroneous. This contention rests upon the ground that while the act of September 30,1902, in terms repealed the former law, it did not provide that the new act should apply to pending prosecutions, and that by force of section 79 of the' Revised Statutes the old law was as to this prosecution still *372 in force. It is urged that Barlow had a right to be tried under the law which existed at the time the prosecution against him was commenced, and that the act of September 30, 1902, did not abrogate any of his existing rights.
Two questions, therefore, arise: 1. Was it error to overrule the challenge to the array? 2. Was the overruling of the challenge prejudicial?
The difference in the two acts to which attention has been called relates to the number of commissioners to select the names to be placed in the wheel, and the persons who are to be present when the jury is drawn. Under the old law the commission for the selection of names was composed of three freehold electors and the court, or a judge thereof, must be present with the clerk and sheriff when the drawing was done; under the later act the commission was composed of four freehold electors, and the clerk and sheriff only are required to be present when the names are drawn from the wheel. The duty of turning the wheel and drawing therefrom the names of jurors is devolved upon the clerk by both acts alike, and the sheriff is required to be present by the provisions of both. If a person accused of crime has a vested right in the manner provided by the state for the selection of juries then this defendant’s rights were invaded by the refusal of the court to sustain his challenge. That such right exists is strenuously insisted upon in argument, but we find no good reason in the briefs of the learned counsel presented in support of the contention. If the change in the law made that criminal which before was not unlawful, or if the new act in any way made it more difficult for the defendant to be guaranteed an impar *373 tial jury, or more easy in any way for the state to procure a conviction, or more difficult in any way for the defendant to overturn the case made by the state against him, then there would be force in the proposition of a vested right. But no such result follows the change in the remotest manner. It wholly relates to the machinery by which the proper persons to serve as jurors are to be obtained; the qualifications of the persons selected are to be the same; all the tests of fitness and all challenges for cause are fully preserved. As well remarked by Welch, J., in Huling v. The State, 17 Ohio St., 583: “It is important to the defendant that he should not be subjected to a trial except upon an indictment found by a jury composed of good and lawful men; but, provided they are such good and lawful men, it is a matter of no interest to him in what manner they are selected and drawn. The manner of selecting and drawing jurors concerns the public rather than the parties to a cause, provided only that irregularities therein do not result in placing .in the box jurors who are disqualified. It seems to us, therefore, that the provisions of law for the.selection, distribution and drawing of jurors, should be regarded as directory, rather than as mandatory and indispensable. They were intended for public convenience, and to equalize the burden of jury service, as well as to insure the selection of competent jurors.” In that case the pleas interposed for the defendant were in abatement on account of divers alleged irregularities in the selection of the grand jury that found the indictment. The overruling of the pleas was sustained by this court, the court holding that the question could not. be made by such pleas, and added that: “Whether *374 they set forth a good cause for challenge to the jury, need not now be decided.”
Section 79 of the Revised Statutes, much relied upon, provides that: “Whenever a statute is repealed or amended, such repeal or amendment shall iñ nó manner affect pending actions, prosecutions or proceedings, civil or criminal; and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions or proceedings, unless so expressed.” To have effect, therefore, upon a prosecution pending, the amendment must affect either the right of'a party to his cause of action or to his defense, or the remedy already existing for enforcing that right or making good that defense. It means, we suppose, that the general assembly may not, by new legislation, destroy or impair vested rights; and if it undertakes to change the remedy by which those rights are to be enforced so as to affect pending prosecutions, it must express that purpose: If we are correct in the conclusion above stated, nothing moré need be said respecting the first clause of this section, for it is clear that if no vested right of the defendant has been impaired by the change in the law then the change in no manner affects the pending prosecution. And as to the matter of remedy it cannot be said that the mere beginning .of a suit gives the party a vested right in any special form of remedy or entitles him, to have the same conducted at every stage according to the course of procedure which was prescribed by law when the suit was commenced. The rule is well settled by repeated adjudications that no one has a vested interest in any particular remedy for the enforcement of a right. The remedies which one legislature may have prescribed *375 a subsequent legislature may modify provided a substantial and adequate remedy is left. But does the amendment, relate to the remedy at all? We think it does not. The change relates to certain processes of the law necessary to initiate and keep in motion the machinery which the law provides for the administration of justice, not the administration of justice in this class of prosecutions alone, but the general administration of justice, civil as well as criminal, while the term “remedy” within the meaning of the statute, is the means employed to enforce a right or redress an injury; that is, the legal mode for enforcing a right or redressing or preventing a wrong. To illustrate: we speak of the remedy for nonfulfillment of contract as an action, under the old practicé in assumpsit, covenant, debt, detinue, or in tort if the injury is to the individual, and the like, and under the code, the civil action embracing all of these; while in criminal prosecutions the remedy is by indictment; or information, or, in some minor offenses, by compláint before a magistrate. But in the trial of indictments the remedy no more relates to the manner of the selection of juries than to the manner in which the judge who may be called on to preside at the trial shall be selected. His relation to the interests of the party is just as important as is that of jurors, and if a party may object that the jurors empaneled to try bim have not been selected by the same jury commission that was empowered to act when the crime was committed, or that the persons required to be present at the drawing are not the identical persons who would have attended had the jury been drawn under the former law, why may he not object that the judge is incompetent to sit if it happens that he may *376 have been, by reason of some late act of the legislature which has worked a change in the judicial subdivision, elected by a constituency in part composed of different electors from those who would have had the right to choose a judge at the time the crime was committed, or because the judge may have been chosen under an election law different from that in force at the time of the commission of the crime and the commencement of the prosecution? If this effort at fine sighting is to prevail we may next expect that some aátute and vigilant defender of “innocence” will be insisting that his client’s vested rights have been overthrown because in the appointment of the court bailiff who waits upon the jury due formality has not been observed, or because the court was held in a different building or room from that formerly, used for the holding of'court, or because the clerk has not kept his journal with the same precision and good taste as formerly, or because the court crier has. not observed the ancient formalities in opening or adjourning the court. There is no point to which absurdity may not be carried when we start on the quest of technicalities.
That the term “remedy” should be construed in its comprehensive sense rather than in the minute sense which counsel insist upon, is, we think, abundantly shown by comments of law writers on the subject. Prof. Black, in his Law Dictionary, 1019, gives this: “Remedy. Remedy is the means by which the violation of a right is prevented, redressed or compensated. Redresses are of four kinds: 1. By act of the party injured, the principal of which are defense, recaption, distress, entry, abatement, and seizure; 2. By operation of law, as in the case of re *377 tainer and remitter; 3. By agreement between the parties, e. g., by accord and satisfaction and arbitration; and 4. By judicial remedy, e. g., action or suit.” See, also, 2 Bouvier, 870; Castle’s Case, Cro. Jac., 644; Stephens v. Watson, 1 Salk., 45, and note; and Rex v. Robinson, 2 Burr., 803.
It may be added that the provision of section 7276, Revised Statutes, would seem to indicate that the selection and drawing of jurors has not been understood by our láw-makers to come within the purview of section 79. That provision is: “In all other criminal cases (meaning criminal cases other than capital offenses) the jury summoned and empaneled according to the provisions of law relating to the summoning and empaneling of juries in other cases, shall try the accused. ’ ’
Palmer v. The State, 42 Ohio St., 596, and Cincinnati v. Davis, 58 Ohio St., 225, are cited as sustaining the judgment of reversal. The question in the Palmer ease arose on the empaneling of the jury, and involved the competency of individual jurors. Nobody doubts that a party who is to be tried by a jury is entitled to a fair and impartial jury of good and lawful men. The law in force at the time the prosecution was commenced gave a wider latitude of challenge by the defendant than the amended law enacted before the trial, and this-court held that the defendant was entitled to challenge as provided in the old act. The Cincinnati case holds simply that a proceeding for the improvement of an alley begun under a proper board was properly completed under that board notwithstanding subsequent legislation gave jurisdiction over the improvement of alleys to another city *378 board. Neither case reaches the question we have before us.
■ The judgment of the circuit court appears to have been based on the case of Bach v. The State, 38 Ohio St., 664, The question in that case was whether it was error for the trial court, against the ■objection of the accused, to cause a special venire to issue for persons to fill vacancies, the names to be drawn from the box, where the statute requires ■such names to be selected by the presiding judge. 'The trial court did not' follow any law, and this ■court reversed the judgment for that error. Doubtless the decision worked some benefit as a matter of ■discipline, for manifestly it is the duty of all courts to follow the .statutej and not to disregard it. Whether in a like case a like holding would be made by this court at this time, we need not discuss.
We are of •opinion that the changes in the jury law affect neither, the vested rights of the accused ■on the merits, nor the remedy by which those rights are to be preserved, and that the overruling of the ■challenge to the array was not error. But suppose we are mistaken in this, still it is- not apparent that any prejudice has been wrought to this defendant, and if not, the error is not one which would warrant a reversal of the judgment of the trial court. It is •only for errors .which are prejudicial that a judgment should be reversed. Scovern v. The State, 6 Ohio St., 288; McHugh v. The State, 42 Ohio St., 154. As remarked by Williams, J., in The State v. Thomas, 61 Ohio St., 444: “It may be remarked at the outset that the objections are not to be tested by the over-refined technicalities that were the outgrowth of a system of criminal laws of unreasonable *379 severity, and a humane desire on the part of the courts to shield those charged with their violation from excessive and cruel punishment, hut by the rule of our criminal code by which defects and imperfections are to be disregarded which do not tend to the prejudice of the substantial rights of the defendant bn the merits.”
The right of everyone accused of crime to a fair trial should be secured to him, and this court, as'in the past, will insist upon this, but we do not incline to search for unsubstantial errors, or to give.undue effect to them when discovered by others. .
The judgment of the circuit court will be reversed and that of the common pleas affirmed.

Reversed.

Davis, Shauck, Price and Crew, JJ., concur.
Summers, J., not sitting.